**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZENA M. HARMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19 C 00036 |
| | ) |
| HEALTH FORCE NURSING AGENCY, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zena M. Harmon worked as a registered nurse for Defendant Health Force Nursing Agency (hereinafter, "Defendant" or "Health Force") from May 10, 2016 until the spring of 2017. Health Force provides patients with various forms of skilled and unskilled home health care. In May 2017, Health Force placed Plaintiff on inactive status because she had not updated her nursing credentials by her annual May 9, 2017 deadline, but Plaintiff asserts that Health Force staff had some contacts to discuss nursing assignments with her in the months that followed. In June, Plaintiff says, Health Force presented her with an unsatisfactory schedule, and she resigned; in August, she says, Health Force briefly proposed that she work two days, but withdrew the proposal. By December 2017, however, when she had not worked another shift, Plaintiff contacted Health Force to ask about unemployment compensation benefits. On July 17, 2018, she filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging June 21, 2017 as the latest date that discrimination took place. The EEOC dismissed her charge on December 10, 2018, and Ms. Harmon's complaint in this court, in which she alleged both race and age discrimination, followed on January 3, 2019.

In July 2019, this court dismissed Plaintiff's age claim and Title VII race discrimination claim because Plaintiff's EEOC charge was not timely filed. Defendant now seeks summary judgment on Plaintiff's race discrimination claim under 42 U.S.C. § 1981, contending that undisputed evidence establishes that Ms. Harmon lost her job because she had not updated her

nursing credentials, not because of her race.  As explained here, there are disputes about Health Force's contacts with Plaintiff, but neither side's version of events supports an inference of race discrimination.  The motion [28] is granted.

### **BACKGROUND**

As required by this court's Local Rules, Defendant filed a statement of uncontested material facts, supported by citations to the summary judgment record.  (Def.'s Mot. for Summ. J. [28].)  Also as required, Defendant provided Plaintiff, a *pro se* litigant, with the Local Rule 56.2 Notice [29], explaining how Plaintiff should respond to Defendant's summary judgment motion and cautioning that the court would deem Defendant's factual contentions admitted if she failed to follow the procedures delineated in Local Rule 56.1.  *See, e.g., Apex Dig., Inc. v. Sears, Roebuck & Co.,* 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).  Plaintiff did respond, admitting many of Defendant's factual statements or acknowledging that she has no information concerning the truth of those statements.  (Pl.'s Resp.to Def.'s L.R. 56.1 [37].)  Although some of her denials of Defendant's factual statements do not cite to specific parts of the affidavits, the record, or other supporting materials (*see, e.g., id.* ¶¶ 3, 9–16), the court has reviewed the record materials, including her deposition transcript, and draws inferences from the evidence in her favor.

The parties' submissions establish the following:  On approximately May 10, 2016, Plaintiff was hired by Health Force as a registered nurse.  (Def.'s L.R. 56.1 [28-2] at ¶ 5.)  As part of the hiring process, Plaintiff signed a written job description and a document confirming that, as a condition of continued employment with Health Force, she would need to keep her licensure requirements up to date along with all other documents required by relevant Federal, State, and contracting agencies.  (*Id.* ¶¶ 6–7.)  Plaintiff testified that the signature that appears on the Health Force "Conditions of Employment" form "looks funny" to her, but she acknowledged that she signed a number of documents when she began work for Health Force, and has not denied signing the Conditions of Employment form.  (Zena M. Harmon Dep. [28-5] 14:2–15:6; Zena M.

2

Harmon Decl. [38] ¶ 8.) She admits, further, that Health Force requires all of its registered nurses to complete annual credentialing and certification requirements. (Pl.'s Resp. to Def.'s L.R. 56.1 ¶ 9.) When it hires a registered nurse, Health Force enters that nurse's certification deadline into its computer database called Visions. (Def.'s L.R. 56.1 ¶ 11.) Health Force then tracks its nurses' annual certifications, running an audit report every Friday to determine whether any nurses are facing upcoming certification deadlines, and issues a written notice to any nurse whose credentials are about to lapse. (*Id.* ¶¶ 11–12.)

On April 7, 2017, the Visions report noted that Plaintiff's credentials were set to expire in approximately 30 days. (*Id.* ¶ 13.) The program generated a written notice advising Plaintiff that to avoid being placed on inactive status, she needed to complete four items: a TB test or chest X-ray, an updated Health Assessment, and both HIPPA and OSHA Inservice training sessions. (*Id.* ¶¶ 13–14.) Health Force mailed the notice to the address Plaintiff listed on her Personnel Information Sheet: 19940 Glenwood Road. (*Id.* ¶ 15.) Plaintiff denies receiving the notice, perhaps because, as she now admits, she inadvertently provided the incorrect address; the correct address (her granddaughter's home address, which Ms. Harmon uses as her mailing address) is 19440 Glenwood Road. (Pl.'s Resp. to Def.'s L.R. 56.1 ¶¶ 15, 17–18.) The written notice was not returned as undeliverable (Def.'s L.R. 56.1 ¶ 16), and Health Force staff made additional attempts to reach Plaintiff using three different phone numbers on file for her. (*Id.* ¶ 19.) Those efforts were unsuccessful. (*Id.*) Although she denies receiving any reminders from Health Force, Harmon admits that maintaining annual certification and credentials was her responsibility, and that she knew that her annual certification was due prior to her anniversary date of May 9, 2017. (Pl.'s Resp. to Def.'s L.R. 56.1 ¶¶ 20–21.)

Plaintiff says she has no knowledge of the attempted phone calls, and she doubts Health Force's claim that it sent notice to her. She testified that Health Force had sent monthly statements to the address on file and she had received them. (Harmon Dep. 55:8–12.) Further, Plaintiff testified that the former staffing coordinator, "Harry" was always able to reach her; when

3

he left, Health Force staffing director "Kim," called her about four times using the number on file. (*Id.* 59:9–19.) Plaintiff added that her daughter also worked at Health Force; the daughter's "number was in the folder," and, Plaintiff asserts, both "Harry" and Denise Musial, the Health Force office administrator, knew this. (*Id.* 60:7–10.) Finally, Plaintiff testified that Health Force called her once in June and twice in August 2017. (*Id.* 79:1–3, 81:2–5.)

Plaintiff's last day on the job was April 30, 2017. (Def.'s L.R. 56.1 ¶ 22.) She was placed on inactive status on May 9, 2017. (*Id.* ¶ 23.) Defendant contends Plaintiff did not contact Health Force again until the end of 2017, when she called seeking information concerning unemployment benefits. (*Id.* ¶ 24.) Plaintiff disputes this and describes two other contacts with Health Force during the summer of 2017. First, she testified that in early June, she met with Denise Musial and Kim to discuss her work schedule. (Harmon Dep. 21:8–22:17.) At that meeting, Harmon testified, Kim told Plaintiff that the mother of the homebound patient for whom Harmon had been providing care no longer wanted Harmon's services. (*Id.* 22:7–17, 39:16–24.) Kim told Harmon "that [the client's] mom said, I no longer was able to take care of the child like the young nurses were." (*Id.* 22:7–9.) Harmon testified that this "made [her] mad," and she announced her intention to resign. (*Id.* 22:10–12.) Ms. Harmon recalls that Musial asked her not to resign and offered Ms. Harmon a $1.00 per hour raise if she would accept another work assignment, but Plaintiff refused, "wrote out the resignation," and "gave it to Kim." (*Id.* 22:12–24.) In this meeting, Harmon testified, Musial made no mention of expired credentials. (*Id.* 41:6–9.) Harmon testified that she later questioned the client's mother, who denied having told Kim she did not want Harmon's services. (*Id.* 23:1–4.) In fact, the mother called Harmon later to request that she return to work caring for the client on August 26 and 27. (*Id.* 23:17–23.) Harmon agreed, and "an hour later Kim called back and she said, 'Ms. Harmon, she said, you're on the schedule for the 26th and 27th of August.'" (*Id.* 23:24–24:2.) But "[a]n hour later Kim called back and she said, 'Ms. Harmon, we're not going to be able to use you for the 26 and 27th'" because the staff originally scheduled that day insisted on working that shift. (*Id.* 24:5–15.) Plaintiff called Kim "several times" after that, but "Kim kept

4

saying there are no openings." (*Id.* 24:16–19.) Harmon does not dispute that the records show she worked no shifts for Health Force after April 30, 2017. (Pl.'s Resp. to Def.'s L.R. 56.1 ¶ 22.)

On July 17, 2018, Plaintiff, then age 83, filed a charge with the EEOC against Health Force, alleging age discrimination dating from June 2017. (*Id.* ¶ 25.) Plaintiff did not check the box marked "RACE" on the intake form, nor did she make allegations about race discrimination, but her complaint in this court alleges discrimination on the bases of both race and age. (*Id.*) This court dismissed Plaintiff's age discrimination claim under the Age Discrimination in Employment Act and her Title VII race discrimination claim as untimely (Min. Entry of July 18, 2019 [22]), but allowed her to pursue a claim of race discrimination pursuant to 42 U.S.C. § 1981. (Pl.'s Resp. to Def.'s L.R. 56.1 at ¶ 25.) Asked at her deposition what evidence supported her race discrimination claim, Plaintiff responded, "The evidence is she [Plaintiff's supervisor]'s a different color and I'm black." (Harmon Dep. 47:20–24.)

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.,* 926 F.3d 356, 359 (7th Cir. 2019). If the movant meets its burden, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). On a motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *See Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019) (citation omitted).

The Seventh Circuit has "discarded the distinction between direct and indirect methods of proof in employment discrimination cases, and clarified that all evidence must be evaluated as a whole." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016)). "Thus, the proper inquiry . . . is whether a reasonable jury could determine, based on all of the record evidence," that a protected characteristic "was

the cause of [plaintiff's] termination." *Lauth*, 863 F.3d at 715; *see also LaRiviere*, 926 F.3d at 359 (explaining that in race discrimination suits under Title VII, the question a court "seek[s] to answer is whether a reasonable juror could conclude that [the plaintiff] would have kept her job if she had a different ethnicity, and everything else had remained the same") (internal quotation marks and alterations omitted). In evaluating the evidence, courts may nevertheless "draw upon the familiar *McDonnell Douglas* burden-shifting framework to determine if triable issues exist." *LaRiviere*, 926 F.3d at 359–60 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (stating that the *McDonnell Douglas* approach is "a common, but not exclusive, method of establishing a triable issue of intentional discrimination" in Title VII litigation) (internal quotation marks omitted).

Defendant invokes the *McDonnell Douglas* approach in this case, recognizing that Plaintiff can create an inference of discrimination by presenting evidence that (1) she was a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of Plaintiff's protected class of employees were treated more favorably. *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013). For purposes of this motion, Defendant concedes that Plaintiff could meet the first and third elements. (Def.'s Mot. for Summ. J. at 9.) But, Defendant contends, she cannot establish the second or fourth elements. It is undisputed that registered nurses at Health Force need to complete annual credentialing certifications to continue working (*id.*); accordingly, in Defendant's view, Plaintiff cannot demonstrate that she met Health Force's legitimate job expectations or that similarly situated registered nurses outside of her protected class were treated more favorably. In support of her claim of race discrimination, Plaintiff points out that Defendant's staffing director, Kim, and administrator, Denise Musial, are not Black, and denies receiving notice in April 2017 that she would be placed on inactive status or knowing about Health Force's practices in this regard. (Pl.'s Resp. to Def.'s L.R. 56.1 ¶¶ 12, 15.)

6

From Defendant's perspective, Plaintiff's knowledge of its certification requirements may not be what matters. Health Force notes that Plaintiff knew she had to have up-to-date credentials in order to work as a registered nurse for Health Force. According to Health Force, Plaintiff signed Health Force's "Conditions of Employment," which suggests Plaintiff was aware of the need to keep her licensure requirements up to date as required by relevant Federal, State, and contracting agencies. (*Id.* ¶ 7.) Plaintiff admits she was independently aware of the annual certification and credentialing requirements. (*Id.* ¶¶ 8, 20.) Defendant was free to enforce its credentialing requirement even if Plaintiff were unaware of it, so long as there was no evidence that similarly situated employees who were not members of Plaintiff's protected class were treated more favorably.

Adducing such evidence in this case is complicated by the fact that, according to Plaintiff, she was one of only two registered nurses employed by Health Force. (*Id.* ¶ 9.) And, drawing inferences in favor of Plaintiff, there is evidence that, however important it was for her to maintain current credentials, Ms. Harmon's failure to do so may not have been the only reason that Health Force did not call her back to work after May 2017. Plaintiff asserts that she did receive a work schedule from Health Force in June. She has also offered evidence that Health Force declined to schedule her to care for a client with whom Plaintiff had a long relationship because the client's mother expressed a preference for a younger nurse. Whether the mother actually expressed such a preference is not clear, but a customer's preference for younger staff would not excuse discrimination on the basis of age. *Cf. Equal Emp't Opportunity Comm'n v. St. Anne's Hosp. of Chicago, Inc.,* 664 F.2d 128, 133 (7th Cir. 1981) ("[I]t would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the . . . discrimination was valid"); *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 914 (7th Cir. 2010) (a patient's preference for white aides that a nursing home employs does not trump the care provider's duty to abstain from race-based work assignments). According to Harmon, the same client requested her services on two dates in August, and Health Force was willing to schedule her for those dates,

7

well after her credentials had expired. Harmon insists, further, that the subject of her credentials never came up until December 2017. (Harmon Decl. ¶ 13.)

As noted, Health Force denies that it had any contact at all with Ms. Harmon from May 2017 until December of that year. Even if this is not true, and Health Force did contemplate assigning Ms. Harmon for nursing shifts in June or August, it may be that any scheduled work assignment would have been contingent on Harmon's bringing her credentials up to date. By Ms. Harmon's own account, it was a client's purported preference for younger nurses that motivated Health Force to take Ms. Harmon off the schedule in June 2017. In response, Ms. Harmon resigned; her EEOC charge identifies June 2017 as the date on which she suffered age discrimination. But neither that version of events, nor Health Force's version, supports an inference of *race* discrimination. The only evidence Plaintiff offers in support of that claim is that Kim and Musial are not Black, and that Plaintiff was not told prior to December 2017 that she needed to update her credentials. (Harmon Decl. ¶¶ 12–13.) Drawing all inferences in Plaintiff's favor, a reasonable jury could not determine from this evidence that race motivated Health Force's decision to place Ms. Harmon on inactive status in May 2017. *See, e.g., Collins v. Buechel Stone Corp.*, 390 F. Supp. 2d 810, 815 (E.D. Wis. 2005) ("The mere fact that most of the harassment was committed by persons of a race different than [plaintiff's] does not mean that race was the motivating factor."); *see also Johnson v. Ford Motor Co.*, No. 15 C 11540, 2019 WL 172760, at *4 (N.D. Ill. Jan. 11, 2019) (same).

## **CONCLUSION**

Plaintiff's age discrimination claim was not timely filed, and her EEOC charge did not mention discrimination on the basis of race. A claim of race discrimination under 42 U.S.C. is not subject to charge-filing requirements, but Ms. Harmon has failed to raise a triable issue of material fact to sustain her claim of race discrimination. Defendant's motion for summary judgment [28] is granted.

ENTER:

Dated: August 5, 2020

_____
REBECCA R. PALLMEYER
United States District Judge

9